UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUDOLPH W. GRIFFIN,

                            Plaintiff,

                v.

MICHAEL CAPRA, FELIX EZEKWE,
VALERIE MONROE, AND DANA GAGE

                           Defendants.[1]

No. 18-CV-10405 (KMK)

OPINION AND ORDER

---

Appearances:

Rudolph W. Griffin
Stormville, NY
*Pro se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Pro se Plaintiff Rudolph W. Griffin ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven"), brings this Action, pursuant to 42 U.S.C. § 1983, against Superintendent of Sing Sing Correctional Facility ("Sing Sing" or the "facility") Michael Capra ("Capra"), and Sing Sing Doctors Felix Ezekwe, Valerie Monroe, and Dana Gage, (collectively "Defendants"). (*See* Second Am. Compl. ("SAC") (Dkt. No. 27).)[2] Plaintiff asserts two claims

---

[1] The Clerk of Court is respectfully requested to amend the caption. The other defendants are no longer named in Plaintiff's Second Amended Complaint.

[2] For reasons unknown to the Court, as of the filing of the instant Motion, Dr. Gage had not been served with the summons in this case. (Dkt. No. 28.) Counsel for Defendants confirmed Plaintiff's interest in having Dr. Gage as a defendant in this matter. (*Id.*) In addition, Plaintiff amended his complaint to specifically name Dr. Gage in this Action once she was identified by

against Defendants. First, Plaintiff alleges that Superintendent Capra was deliberately indifferent to Plaintiff's medical care by failing to ensure adequate medical staffing at Sing Sing. (SAC ¶¶ 34–35.) Second, Plaintiff alleges that Dr. Ezekwe and Dr. Monroe were deliberately indifferent to Plaintiff's medical care by failing to review his medical chart, which resulted in him improperly being given a flu shot while taking a statin. (*Id.* ¶¶ 36–46.) Before the Court is Defendants' Motion To Dismiss the Second Amended Complaint (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Not. of Mot. ("Not. of Mot.") (Dkt. No. 34).) For the reasons explained herein, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts, drawn from Plaintiff's Second Amended Complaint, are assumed to be true for the purposes of this Motion.

While incarcerated at Sing Sing, Plaintiff was diagnosed with diabetes and high cholesterol. (SAC ¶ 16.) As a result of this diagnosis, Plaintiff was prescribed a statin. (*Id.*) On October 23, 2015, Plaintiff was called to the Sing Sing infirmary for his yearly flu vaccine and Dr. Ezekwe administered the shot to Plaintiff. (*Id.* ¶¶ 15, 39–40.) Four days later, on October 27, 2015, Plaintiff began feeling ill and requested to be seen at the Sing Sing clinic. (*Id.* ¶ 18.) On October 29, 2015, Plaintiff claims that he heard a news report on "World News Tonight" that patients taking a statin who receive a flu shot should seek medical attention immediately because the interaction of the two medications could cause a life-threatening allergic reaction. (*Id.* ¶ 19.) The following day, on October 30, Plaintiff was called to the infirmary by a nurse for complaints of chills, sore throat,

---

Defendants as the John Doe defendant. (Dkt. No. 27.) Upon discovering that Dr. Gage had not been served, the Court issued an Order of Service for her. (Dkt. No. 38.) A summons has been issued to Dr. Gage. (Dkt. No. 39.) However, given that Dr. Gage was served after the filing of the Motion, claims against her will not be analyzed below.

muscle aches, and headaches. The nurse scheduled Plaintiff to be seen by Dr. Monroe on November 2, 2015. (*Id.* ¶¶ 20–21.) However, Plaintiff's appointment with Dr. Monroe was cancelled due to a shortage of medical staff after a facility Halloween party. Because there was no staff to see Plaintiff, he was sent back to his cell with flu-like symptoms. (*Id.* ¶ 22.) On November 5, 2015, Plaintiff submitted a sick call slip with a request to be seen by a medical provider but was not seen by one. (*Id.* ¶ 23.) Plaintiff was "finally" seen by Dr. Monroe on November 20, 2015, two and a half weeks after his original appointment on November 2, 2015. (*Id.* ¶ 24.) During that visit, Plaintiff complained of a swollen neck and red throat with "serious" flu-like symptoms. Dr. Monroe prescribed Plaintiff Azithromycin, an antibiotic. (*Id.*) Plaintiff explained to Dr. Monroe that he should not have been given the flu shot because he was on a statin. Dr. Monroe called the facility pharmacist who confirmed the information about the flu vaccine and the use of statins. (*Id.* ¶¶ 25–27.)

Following the visit with Dr. Monroe, Plaintiff continued to experience the same flu-like symptoms for the remainder of December and was treated several times in the Sing Sing medical clinic. For example, on December 4 and December 16, 2015, Plaintiff was seen by Dr. T. Alam, who prescribed two different antibiotics – first, Amoxicillin and later, Levofloxacin. (*Id.* ¶¶ 29–30.) On December 29, 2015, Plaintiff was seen by Dr. Gage who instructed him to stop taking the statin and told him that he should feel better soon. (*Id.* ¶ 31.) Plaintiff states that several days after he stopped taking the statin, his painful symptoms dissipated. (*Id.*) Over a month later, on February 1, 2016, Plaintiff became ill again with a swollen neck, strep throat, tightness in his chest, and wheezing. Plaintiff attempted to go to an emergency sick call, but he and forty other inmates were denied treatment on that day because the clinic was understaffed. (*Id.* ¶ 32.) Plaintiff alleges that he was told there was no nurse available to process him for a sick call even though he observed a nurse at the facility clinic. (*Id.*) Plaintiff was given a direct order to return to his cell. (*Id.*) The

3

same day, Plaintiff filed a grievance documenting his denial of medical treatment, which was stamped received by the Sing Sing grievance office on February 8, 2016 and assigned a grievance number.  (*Id.* ¶ 32.)

    B.  Procedural Background

Plaintiff filed his Complaint on November 8, 2018.  (*See* Compl. (Dkt. No. 2).)  Plaintiff's request to proceed in forma pauperis ("IFP") was granted on December 13, 2018.  (Dkt. No. 6.)  On April 30, 2019, Defendants filed a Motion To Dismiss.  (Dkt. No. 18.)  On May 16, 2019, Plaintiff wrote a letter requesting permission from the Court to amend his complaint in lieu of submitting opposition papers to Defendants' Motion To Dismiss.  (Dkt. No. 20.)  Defendants did not oppose Plaintiff's request.  (Dkt. No. 21.)  The Court granted Plaintiff's request and terminated Defendants' Motion To Dismiss.  (Dkt. Nos. 22–23.)  On April 2, 2020, Plaintiff filed an Amended Complaint.  (Dkt. No. 24.)  In his Amended Complaint, Plaintiff added a claim against a John Doe individual who had been the Facility Health Services Director at Sing Sing in 2015.  Defendants filed a letter identifying the John Doe individual as Dr. Gage and requested an extension of time to respond to the First Amended Complaint.  (Dkt. No. 25.)  The Court granted the extension and ordered Plaintiff to file a Second Amended Complaint by May 7, 2020 that identified Dr. Gage as the John Doe defendant.  (Dkt. No. 26.)

On May 7, 2020, Plaintiff submitted a Second Amended Complaint.  (Dkt. No. 27.)  On August 21, 2020, Defendants filed the instant Motion To Dismiss.  (Not. of Mot.)  On the same day, Defendants filed a Memorandum of Law in Support of the Motion To Dismiss.  (Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 35).)  On September 30, 2020, Plaintiff filed his Opposition.  (Dkt. No. 36.)  On October 14, 2020, Defendants filed a letter with the Court stating that Plaintiff's Opposition "fails to address any of the arguments raised by [D]efendants in their motion."  (Dkt. No. 37.)  Defendants further claimed that because Plaintiff has not "addressed

any of the substantive arguments raised by [D]efendants in their motion" that Defendants would not be submitting a formal reply brief. (*Id.*) Defendants respectfully requested that the Court deem the Motion To Dismiss fully briefed. (*Id.*) The Court grants Defendants request and now deems the Motion fully submitted.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation, alteration, and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context- specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (brackets in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3

(S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents either in [the] plaintiff[']s[] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

    B.  Analysis

        1. Section 1983

"To state a claim under . . . § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes*, 723 F.3d at 405–06. Allegations which are nothing more than "broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). As the Second Circuit has "repeatedly held, complaints relying on . . . civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); *see also Dinapoli v. DPA Wallace Ave II, LLC*, No. 07-CV-1409, 2009 WL 755354, at *3 (S.D.N.Y. Mar. 23, 2009) ("The court will dismiss a complaint that consists of nothing more than naked assertions, and sets forth no facts upon which a court could find a constitutional violation." (citation, alterations, and quotation marks omitted)).

"[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). Prior to *Tangreti*, the Second Circuit held that the following could establish a defendant's personal involvement:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

7

> unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (italics omitted). While the Second Circuit recently rejected "a special test for supervisory liability," *Tangreti*, 983 F.3d at 620, the Court need not address the significance of *Tangreti*, because Plaintiff does not meet even the standard described in *Grullon*.

### 2. Eighth Amendment

Plaintiff alleges a violation of the Eighth Amendment due to inadequate medical care. (SAC ¶¶ 39–46.) "The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a deliberate indifference claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. "There is no settled, precise

8

metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (citation omitted). A defendant's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (citation omitted). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at

703.

### 3. Superintendent Capra

Plaintiff alleges that Capra "allowed and condoned an unconstitutional policy or custom allowing inadequate staffing" at the Sing Sing medical clinic which violated Plaintiff's right to "receive constitutionally adequate and correct medical care." (SAC ¶¶ 34–35.) In support of this conclusory allegation of a "policy or custom," Plaintiff cites two examples of these medical staffing shortages at Sing Sing—the first on November 2, 2015 and the second on February 1, 2016. (SAC ¶¶ 22, 32.) These examples fall woefully short of stating a § 1983 claim because the staffing shortages are two isolated instances insufficient to demonstrate a "policy or custom." *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (concluding that to establish a policy, custom, or practice a plaintiff must show that the conduct was so "persistent or widespread" as to constitute "a custom or usage with the force of law" (citation omitted)); *Brown v. Cook*, No. 20-CV-985, 2020 WL 4352589, at *3–4 (D. Conn. July 29, 2020) (dismissing "wholly conclusory" claims that defendants created a policy or custom of inadequate medical staffing because plaintiff offered no allegations that inadequate staffing levels had any bearing on his injuries), *reconsideration denied*, 2020 WL 5849632 (D. Conn. Oct. 1, 2020). The Second Circuit has held that one instance of misconduct does not establish a policy or custom. *See Green v. City of New York*, 465 F.3d 65, 80–81 (2d Cir. 2006) (holding one instance of alleged misconduct was insufficient to establish a "persistent or widespread" practice which could justify the imposition of municipal liability). Additionally, Plaintiff has not identified a "policy" that promotes staffing shortages at Sing Sing. (*See generally* Compl.) Further, in order to establish liability under § 1983 a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138. None of Plaintiff's allegations plausibly establishes that Superintendent Capra was personally involved in the temporary medical staffing shortages at the

10

clinic that Plaintiff argues deprived him of adequate medical care. In his Second Amended Complaint, Plaintiff merely states that "as a member of the Facility Quality Improvement Committee" Superintendent Capra "ha[d] administrative authority over health care matters." (SAC ¶ 34.) Plaintiff offers no explanation as to how Superintendent Capra's role on this committee or his job meant that he anything to do with any policies as to staffing at the Sing Sing medical clinic. *See Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939 at *6 (S.D.N.Y. June 26, 2009) (noting that a plaintiff can establish personal liability under § 1983 if plaintiff can show "that supervisor creates a policy or custom under which unconstitutional practices occurred"). Further fatal to Plaintiff's claim is that he makes no allegations to plausibly establish that Superintendent Capra even knew about the two instances of medical staffing shortages that Plaintiff cites. Instead, Plaintiff's only allegation is that Capra is the Superintendent, (SAC ¶ 34), but this does not plausibly establish his personal responsibility for any staff shortages because "mere linkage in the prison chain of command is insufficient to implicate a . . . prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation and quotation marks omitted); *see also Joseph v. Fischer*, No. 08-CV-2824, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 8, 2009) (noting that "a defendant can be liable under [§] 1983 only if that defendant took an action that deprived the plaintiff of his . . . constitutional rights."); *Bellamy*, 2009 WL 1835939, at *6 (holding that under § 1983 "a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation"). Accordingly, Plaintiff fails to plausibly allege Capra's personal involvement in the alleged constitutional violation and thus claims against him are dismissed.

### 4. Dr. Ezekwe and Dr. Monroe

Plaintiff also alleges a violation of the Eighth Amendment due to inadequate medical care from Dr. Ezekwe and Dr. Monroe. (SAC ¶¶ 39–46.) Specifically, Plaintiff alleges that Dr. Ezekwe had a duty to review his medical records before administering his annual flu shot to determine

11

whether Plaintiff was taking a statin, and further that Dr. Ezekwe should have known of the possible negative consequences of taking statins and receiving the flu vaccine. (*Id.* ¶¶ 39–42.) Plaintiff also alleges that Dr. Monroe was indifferent to his medical needs during his November 20, 2015 visit when she treated him without reviewing his chart to determine that he had received the flu shot while taking a statin. (*Id.* ¶¶ 43–46.) Plaintiff's allegations, even taken as true, fail to plausibly establish that either Defendant violated Defendant's Eighth Amendment rights.

First, Plaintiff's medical condition is not sufficiently serious to merit constitutional protections. Courts in the Second Circuit have deemed symptoms such as headaches, sore throat, and other flu-like symptoms, like those alleged here, insufficient to satisfy the objective prong for Eighth Amendment purposes. *See, e.g., Allah v. Piccolo*, No. 16-CV-177, 2019 WL 2994338, at *4 (W.D.N.Y. July 9, 2019) (holding that "sore throat, congestion, and headaches are not sufficiently serious to infringe upon [the plaintiff's] Eighth Amendment rights"); *Bradley v. Rell*, 703 F. Supp. 2d 109, 122 (S.D.N.Y. 2010) (holding that "extreme headaches" do not constitute a sufficiently serious medical condition); *Mortimer Excell v. Fischer*, No. 08-CV-945, 2009 WL 3111711, at *4 (N.D.N.Y. Sept. 24, 2009) ("[C]onclusory allegations of heart, chest, and stomach pain, without more, do not satisfy the objective prong of the Eighth Amendment test."); *Flemming v. Velardi*, No. 02-CV-4113, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (complaints of "chest pains" and "discomfort" do not satisfy the objective injury inquiry that triggers an Eighth Amendment claim); *Davidson v. Scully*, 155 F. Supp. 2d 77, 86 (S.D.N.Y. 2001) (noting that "headaches, earaches, sinus congestion, soreness in throat and eyes, tearing, nasal infections, and breathing problems" do "not, in objective terms, [indicate] a serious medical need under the Eighth Amendment"); *Smith v. Montefiore Med. Ctr.-Health Servs. Div.*, 22 F. Supp. 2d 275, 281 (S.D.N.Y. 1998) ("[P]laintiff['s] . . . cold-like symptoms . . . were not sufficiently serious to invoke the protections of the Eighth Amendment."). Thus, the flu-like symptoms that Plaintiff alleges are insufficient to show that the

conditions posed an "unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125 (explaining that there is no static test to determine whether a deprivation is sufficiently serious; instead courts must evaluate conditions in light of contemporary standards of decency). Accordingly, Plaintiff has not met the objective prong to plausibly state an Eighth Amendment claim.

Next, assuming Plaintiff has satisfied the objective component of his Eighth Amendment claim, the Court must determine whether Dr. Ezekwe and Dr. Monroe were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Plaintiff simply asserts conclusory allegations that Dr. Ezekwe "violated [] [P]laintiff[']s right to receive constitutionally adequate and correct medical care, and was deliberately indifferent to the [P]laintiff[']s serious medical needs." (SAC ¶ 42.) Plaintiff lodges this allegation verbatim against Dr. Monroe. (*Id.* ¶ 46.) These allegations do not allege negligent conduct and instead are classically insufficient legal conclusions that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (explaining that in order for a complaint to survive an attack by Rule 12(b)(6) the "plaintiff's obligation [is] to provide the grounds of his entitlement to relief requires more than labels and conclusions" (quotation marks omitted)).

At best, Plaintiff has alleged that Dr. Ezekwe and Dr. Monroe were merely negligent in their treatment of Plaintiff. But it is well established that allegations of "mere negligence" are insufficient to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125 ("To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" (citation omitted)); *Salahuddin*, 467 F.3d at 280 ("In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with

deliberate indifference to inmate health."). Plaintiff offers no allegation from which the Court could infer that Defendants deliberately disregarded a substantial risk of harm to Plaintiff. *See Salahuddin*, 467 F.3d at 280 ("Deliberate indifference is a mental state equivalent to subjective recklessness . . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."); *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *8 (S.D.N.Y. Sept. 28, 2018) (holding that "negligence amounting to medical malpractice" is "insufficient to state a claim of deliberate indifference"); *Hawthorne v. Nurse Sturgeon*, No. 17-CV-438, 2018 WL 4290458, at *4 (N.D.N.Y. Aug. 8, 2018) ("[E]ven if [the defendant's] decisions caused plaintiff unintended harm, negligence is not actionable under [§] 1983."), *report and recommendation adopted by* 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018); *Whitfield v. O'Connell*, No. 09-CV-1925, 2010 WL 1010060, at *7 (S.D.N.Y. Mar. 18, 2010) (disagreements over treatment "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment" (citation omitted)), *aff'd* 402 Fed. Appx. 563 (2d Cir. 2010).

      The closest Plaintiff comes to lodging a plausible allegation is his claim that Dr. Monroe "failed to examine . . . [P]laintiff's medical record and understand that the complications . . . [P]laintiff was suffering [were] cause[d] by him continuing to take statins after being administered the [f]lu [v]accine." (SAC ¶ 43.) Plaintiff argues that this was a "necessary prerequisite to making an informed decision" about his treatment. (*Id.* ¶ 44.) Yet, this allegation amounts to nothing more than that Dr. Monroe acted negligently or that Plaintiff simply disagrees with Dr. Monroe's medical treatment. As noted, merely negligent medical care does not state an Eighth Amendment claim. *See Hodge*, 2010 WL 3932368, at *9 ("[E]ven if [the] [d]efendants did not provide 'proper treatment,' it is well-settled that '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" (final alteration in original) (quoting *Estelle*, 429 U.S. at

14

106)). And, Plaintiff's disagreement with Dr. Monroe's treatment of his flu-like symptoms during his November 20, 2015 visit is insufficient to support a deliberate indifference claim. *See Ford v. City of N.Y. Mayor Michael Bloomberg*, No. 15-CV-7598, 2016 WL 4990258, at *4 (S.D.N.Y. Aug. 26, 2016) (holding that disagreement as to the treatment of plaintiff's illness is not sufficiently serious to offend the Constitution and fails to satisfy the objective element of an Eighth Amendment claim) (collecting cases), *report and recommendation adopted sub nom. Ford v. City of New York*, 2016 WL 4987160 (S.D.N.Y. Sept. 15, 2016); *Engles v. Dunbar*, No. 09-CV-2457, 2010 WL 5538517, at *6 (S.D.N.Y. Dec. 30, 2010) ("The Eighth Amendment is not violated by . . . differences of opinion regarding medical treatment."); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."); *Vento v. Lord*, No. 96-CV-6169, 1997 WL 431140, at *3 (S.D.N.Y. July 31, 1997) ("The thrust of plaintiff's allegations amount to a mere disagreement with the defendants' diagnoses and dissatisfaction with the treatment of her medical condition; allegations which are not actionable under the Eighth Amendment."); *Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y.1996) (explaining that "disagreement as to the appropriate course of treatment [does not] create a constitutional claim"). It also is important to note that Plaintiff's own allegations undercut his claim. For example, Plaintiff describes that during his visit with Dr. Monroe, he complained of "a swollen neck and red throat with serious [f]lu-like symptoms." (SAC ¶ 24.) In response, Dr. Monroe prescribed an antibiotic. (*Id.*) Plaintiff offers nothing by way of explaining how Dr. Monroe's prescription of an antibiotic to address his symptoms amounts to Plaintiff being deprived of adequate medical care.

Finally, Plaintiff points to a delay in his treatment between his first November visit and his second visit that month due to "facility staff not reporting to work after the [Sing Sing] Halloween

party." (SAC ¶¶ 22, 24.) Specifically, he alleges that he "finally made it to the facility clinic" over two and a half weeks later. (*Id.* at 24.) This allegation, however, is insufficient to establish that Dr. Monroe and Dr. Ezekwe were indifferent, as temporary delays in medical care by themselves, do not rise to the level of reckless indifference. *See Jendell*, 980 F. Supp. 2d at 562 (dismissing Eighth Amendment claim in absence of allegations that "the delay was either intentional or reckless"); *Madera v. Ezekwe*, No. 10-CV-4459, 2013 WL 6231799, at *12 (E.D.N.Y. Dec. 2, 2013) ("Courts have . . . refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials."); *James v. Correct Care Sols.*, No. 13-CV-19, 2013 WL 5730176, at *6 (S.D.N.Y. Oct. 21, 2013) (noting that deliberate indifference requires more than allegations about a delay in treatment).

      Further, Plaintiff's allegations fail to demonstrate indifference by Defendants, particularly given the number of visits Plaintiff had with medical professionals while at Sing Sing. Plaintiff himself recounts the specific dates on which he met with medical staff at Sing Sing and the treatment he received during those visits. Taking Plaintiff's allegations as true, it is clear that Plaintiff was seen by a medical provider four times between late November and late December 2015. (SAC ¶¶ 24, 29–31 (noting that medical professionals saw Plaintiff on November 20, December 4, December 16, and December 29, 2015)). For example, Plaintiff was first seen by Dr. Monroe on November 20, 2015, who prescribed him an antibiotic to address his symptoms. (*Id.* ¶ 24.) Plaintiff was later seen on December 4 and December 16, 2015 by Dr. Alam, who prescribed him two different antibiotics. (*Id.* ¶ 30.) Later, Plaintiff was seen by Dr. Gage who told him to discontinue use of the statin and his symptoms subsided. Courts in the Second Circuit routinely grant motions to dismiss in similar circumstances. *See, e.g., Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *11 (S.D.N.Y. Mar. 18, 2019) (dismissing a deliberate indifference claim where plaintiff's medical needs were addressed by examination by a doctor and prescription of pain

medication); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (holding that "treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference"); *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *7 (S.D.N.Y. Mar. 29, 2004) (dismissing deliberate indifference claim because "[i]t is undisputed that [the] defendants examined [the] plaintiffs numerous times over several years, administered diagnostic tests, and prescribed medications to treat [the] plaintiffs' [illness]"), *aff'd*, 459 F.3d 241 (2d Cir. 2006); *Perez v. Hawk*, 302 F. Supp. 2d 9, 21 (E.D.N.Y. 2004) (dismissing a claim of inadequate medical care given that plaintiff received frequent medical attention while incarcerated). Thus, Plaintiff's Eighth Amendment claims against both Dr. Ezekwe and Dr. Monroe are dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. The Second Amended Complaint is dismissed without prejudice. Plaintiff may file a Third Amended Complaint within 30 days of the date of this Opinion & Order correcting the deficiencies outlined above. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Second Amended Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 34), and to mail a copy of this Order to Plaintiff.

SO ORDERED.

DATED:  March 31, 2021
        White Plains, New York

                                                    _____
                                                    KENNETH M. KARAS
                                                    UNITED STATES DISTRICT JUDGE

17